# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> SAMUEL GULICK, : <br> : <br> Defendant. : <br> : | Criminal Action No. 21-1-LPS |

## DEFENDANT'S SENTENCING MEMORANDUM

On January 3, 2020 Samuel Gulick was eighteen years old. Legally, he was adult – able to drive and go to war, but not yet permitted to drink. Mentally, he was an adolescent. Psychologically and behaviorally, he was a much younger child[1]. On January 3, 2020 Samuel Gulick engaged in offense conduct that reverberated throughout his community and Delaware. It was an action that led to street protest rejecting his behavior. It was an action that resulted in his swift incarceration, which has now extended for over two years. It was an action that was preventable – not by law enforcement, but by the adults who knew Sam. The preceding are facts, facts that took the parties years to fully unravel and understand.

Sam stands before the Court having accepted responsibility for two counts in the Information: Intentional Damage to a Reproductive Health Facility that Provides Reproductive Health Services, in violation of 18 U.S.C. § 248(a)(3) and Possession of an Unregistered Destructive Device, in violation of 26 U.S.C. § 5861(d). He has grown immensely in the past two years in both his understanding of his actions and his

---

[1] *See* Exhibit A – Report of Dr. Laurie Sperry (August 29, 2021)

understanding of himself. However, he still has significant work to do. Work that can only be done outside of a custodial setting. Accordingly, a sentence of time served (26 months and five days) followed by a restrictive, research informed period of supervised release is the most appropriate disposition of this matter. The United States Probation Office has invested themselves in understanding Sam's needs and the structure necessary to keep him progressing forward and is prepared to provide the supervision and resources necessary to assure that Sam reaches his potential without posing any continued risk to the community. This suggested sentence considers Sam's history and characteristics and the nature and circumstances of his criminal conduct.

I. <u>PERSONAL BACKGROUND AND OFFENSE CONDUCT</u>

Sam is the oldest of four kids, who were all raised in a loving home by two parents who have strived earnestly to provide the best for their children. As a young child he was home schooled. He had noted developmental issues, which his parents sought professional help to manage, and which were treated until around the age of fifteen[2]. He had few friends as a child and struggled to connect, in part due to his diagnosis. He also suffered from developmental stutter, which continues to impact his ability to communicate to this day.

As his siblings grew older, and the home school grew crowded, Sam's parents enrolled him in The New School – a private, alternative school with less than thirty students across grades. At the New School students are permitted to self-direct their studies. Sam was enrolled at age thirteen and within two years he informed his parents

---

[2] *See* Exhibit B - Report of Dr. Thomas Haworth (April 7, 2020).

2

that he no longer wished to receive treatment for his diagnosis. Regrettably, he was allowed to discontinue treatment.

Within the year Sam began to focus his attention on a conservative form of Catholicism that was practiced by the leadership of the New School. It quickly became a priority in his life, and he was "convicted to convert" by a member of the leadership at the New School. **PSR ¶ 67**. He was baptized, taking an employee of the school as his godfather. He began attending mass on a weekly basis and he spent hours every day attempting to educate himself on Catholicism. Outwardly, he was quiet, well behaved, and hard working. He received high praise from the school and was successfully employed by a non-profit organization connected to the school leadership. He even worked to contribute to his tuition. To his parents, it appeared that he was thriving. His main motivation was approval and he received it in droves.

The reality was that he was going farther inward and was increasingly socially isolated. He had few same aged peers and spent his weekend social time with the adults who ran the New School. He considered them to be his closest friends. He believed they were peers. On January 3, 2020 he committed an act not at their direction, but with the intent to impress them. It was reportedly shocking, but the warning signs were there. It should have been stopped, but all of Sam's cries for help had gone unanswered.

II. <u>GUIDELINES</u>

The guideline is appropriately set at thirty-seven to forty-six (37-46) months. **PSR ¶ 108**.

III. <u>3553(a) SENTENCING FACTORS</u>

When determining an appropriate sentence, this Honorable Court is guided by the 3553 factors, which are: (1) The nature and circumstances of the offense and the history and characteristics of the defendant; (2) The need for the sentence imposed, including that the sentence provide the defendant with needed training and treatment in the most effective manner; (3) The kinds of sentences available; (4) The kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; (5) Any pertinent policy statement; (6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) The need to provide restitution to any victims of the offense.

Here, the Court should place the most significant weight on Sam's history and circumstances and the need for the sentence to provide training and treatment in the most effective manner. Sam's youth, impressionability, and the overwhelming failure of the adults around him were the indirect causes of the offense behavior. Had Sam's psychological issues been better understood and treated appropriately the Court would have never known his name. Moving forward, a well-researched plan is in place to assure that Sam receives the support and education that he needs to guide his development and assure the Court that he will not be a risk to anyone. The Court should not be "so appalled by the offense that it los[es] sight of the offender." *United States v. Olhovsky*, 562 F3d 530, 549 (3d Cir. 2009).

The most effective manner for providing Sam with the treatment and job training that he needs is through community-based supervision[3]. Although the sentencing guidelines in this matter are properly set at thirty-seven to forty-six (37-46) months, this Court is not constrained to impose a sentence in that range. Post *Booker*,[4] the sentencing guidelines are advisory and are only one factor in determining the appropriate sentence. In this matter the Court should place significant emphasis on Sam's youth, his psychological struggles, and additional basis which will be discussed at sentencing. These factors distinguish Sam from other defendants and provide ample basis for this Court to grant the requested variance.

Sam does not object to paying reasonable restitution in this matter.

CONCLUSION

For the foregoing reasons it is respectfully requested that this Court impose a sentence of twenty-six months and a three-year period of supervised release with further conditions of release to be fashioned by the Court at the time of sentencing

                                           Respectfully submitted,

                                           ELENI KOUSOULIS
                                           Federal Public Defender

Dated: March 2, 2022        By:       /s/ *Conor Wilson*
                                           CONOR WILSON, ESQ.
                                           Assistant Federal Public Defender
                                           800 King Street, Suite 200
                                           Wilmington, DE 19801
                                           (302) 573-6010
                                           de_ecf@fd.org

                                           Attorneys for Samuel Gulick

---

[3] *See* Exhibit C – Treatment Plan.
[4] *United States v. Booker*, 543 U.S. 220 (2005).